## MILLER et al. v. BUSH et al.

### No. 1067.

Court of Civil Appeals of Texas. Waco.

June 4, 1931.

Rehearing Denied Oct. 1, 1931.

W. L. Eason, of Waco, for appellants.

Spell, Naman & Howell, of Waco, for appellees.

GALLAGHER, C. J.

Waco Twine Mills, a corporation, was in financial straits and its stockholders executed and delivered to the directors thereof a contractual obligation, the material provisions of which were as follows:

"We, the undersigned stockholders of the Waco Twine Mills, in order to induce the directors of said corporation to properly finance the same by borrowing money on the credit of the Twine Mills with their indorsement, or in such other manner as to them may seem for the best interest of said mill, have agreed and here now agree that in event the directors of said corporation should by reason of such indorsement be required to pay any sum or sums of money, then we, and each of us, agree to reimburse such directors, or either of them, to the extent of the payment so made by them, or either of them, our pro rata part of such amount so paid out by the said directors.

"It is understood and agreed, however, that none of us shall in any event be liable in a greater sum than the amount set opposite our names, being one-half the amount at par value of the stock now owned by us."

All the directors joined the other stockholders in executing this obligation. Each of the signers thereto set opposite his name the number of shares of the capital stock of said corporation which he held at the time, as a basis for determining the limitation on his liability imposed by the terms of the second paragraph thereof, as above quoted. The directors of said corporation thereafter borrowed on its note from the First National Bank of Waco $65,000. Said note was indorsed by all the directors of the corporation serving at the time except one.

Said indebtedness was afterwards reduced by payments to $37,000, and a renewal note therefor was executed by the corporation and indorsed by T. F. Bush, J. M. Penland, D. M. Wood, J. B. Earle, G. H. Penland, J. B. Ellis, and T. S. Corriher, all of whom were at that time directors of the corporation. Thereafter the corporation was adjudged a bankrupt. Its assets were disposed of by the trustee, and the dividend apportioned to the bank as holder of said note was applied thereon. The indorsers on said note then made a calculation, prorating the unpaid balance due thereon among the respective stockholders in proportion to the shares of stock held by them. T. S. Corriher owned 220 shares in said corporation. He was at that time insolvent. He and the shares owned by him were excluded from consideration in making such apportionment. He never paid any part of such balance. According to such apportionment, the liability of each of the other signers of said obligation was $27.40 per share on each share held by him. All the other signers except C. R. Miller, G. H. Connell, R. W. Higginbotham, Hugh Halsell, and J. B. Ellis paid the respective sums charged against them in such apportionment. The above-named T. F. Bush, J. M. Penland, D. M. Wood, J. B. Earle, and G. H. Penland then paid the balance due the bank on said note and had the same transferred to them without recourse. They then instituted this suit on said obligation against C. R. Miller, G. H. Connell, R. W. Higginbotham, Hugh Halsell, and T. S. Corriher to recover the amount so paid by them to the bank. During the pendency of the suit, J. B. Earle, one of the plaintiffs, died, and his administratrix, Mrs. Louise Madden Earle, was made a party plaintiff in his stead. The defendant G. H. Connell also died, and his executrix, Mrs. Josephine Connell, was made a party defendant in his stead.

The case was tried by the court without a jury. The testimony showed that R. W. Higginbotham and Hugh Halsell had during the pendency of the suit paid the respective amounts charged against them in said apportionment and they were dismissed from the suit. The testimony further showed that T. S. Corriher was still insolvent and he also was dismissed therefrom. The testimony showed that shares in said corporation were of the par value of $100 each; that C. R. Miller owned 500 of such shares and G. H. Connell owned 130 of such shares at the time they joined in executing and delivering the obligation sued on; and that neither of them had paid any part of the respective sums charged against them in such apportionment. The testimony further showed that the plaintiffs in said suit had employed counsel to institute and prosecute the same and that 10 per cent. of the amount sued for was a reasonable fee for such services. The court thereupon rendered judgment in favor of the plaintiffs aforesaid against the defendant C. R. Miller for the sum of $13,700, being $27.40 per share on each of the 500 shares owned by him, and for the further sum of 10 per cent. thereon as attorney's fees. The court also rendered judgment in favor of said plaintiffs against the defendant Mrs. Josephine Connell as independent executrix of the will and estate of G. H. Connell, deceased, for the sum of $3,562, being $27.40 per share on each of the 130 shares owned by said Connell, and for the further sum of 10 per cent. thereon as attorney's fees. The court further rendered judgment in favor of the plaintiffs against said Miller for his proportion of any part of the judgment rendered against said executrix which could not be collected from her, and against said executrix for her proportion of any part of the judgment rendered against Miller which could not be collected from him, not to exceed, however, in the aggregate the sum of $6,500, to which amount the liability of said Connell was limited by the express terms of the obligation sued upon. The defendants present said judgment to this court for review.

## Opinion.

Defendants present a proposition in which they contend that the execution and delivery by plaintiffs of their personal note to the bank in lieu of the note of the corporation indorsed by them did not constitute a payment thereof, and that since the obligation sued on merely bound them to reimburse plaintiffs for such sums of money as they might be required to pay as such indorsers, no liability against them arose by reason of such transaction. The testimony showed affirmatively that plaintiffs did not pay the balance due the bank on its note against the corporation in cash, but merely executed and delivered to the bank their own note for such balance. Plaintiff G. H. Penland, the only witness who testified, stated specifically that plaintiffs paid the debt of the corporation to the bank with their own note. There is no testimony to the contrary. The finding of the court in favor of plaintiffs, being general, includes by implication a specific finding that the bank accepted said note in payment and discharge of its debt against the corporation. Hines v. Kansas City Life Insurance Co. (Tex. Civ. App.) 260 S. W. 688, 690, pars. 2 and 3. Plaintiffs having made such payment as indorsers of the note of the corporation, defendants as signers of the indemnity obligation sued upon became by the very terms thereof bound to reimburse them therefor. Neither the situation nor the rights of the parties were affected by the fact that plaintiffs had said note transferred to them at the time they gave their own note in payment thereof. The bankrupt corporation was the sole maker thereof. Its assets had been disposed of by the trustee in bankruptcy and the final dividend paid to the bank and credited on the note prior to such transfer. Said note, having been paid by plaintiffs, who were indorsers thereon, was worthless, except as evidence in this suit or in an equitable action by them for contribution against the indorsers not participating with them in the payment thereof.

Defendants present a proposition in which they contend that their liability under the indemnity contract sued on, in which they bound themselves, within the limits stipulated, to reimburse the directors to the extent of their pro rata part of the amount paid out by them, should have been determined by the number of signers thereto, instead of the number of shares owned by such signers at the time. We do not think the contract, considered as a whole in the light of attending circumstances and the purposes for which it was executed, supports or justifies such construction. We may properly assume from the fact that the directors immediately negotiated a loan in the sum of $65,000, that such sum was needed to properly finance the corporation, and that the defendants and other signers of such contract contemplated that the directors would by indorsing its paper incur liability in approximately such amount. There were sixteen signers to such contract. They owned at the time 1,292 shares. Said shares were of the par value of $100 each. A contribution from each of said signers of $50 per share owned by him would have amounted in the aggregate to $64,600, or approximately the sum for which the directors became personally liable as indorsers on the paper of the corporation. Since the directors also signed such contract of indemnity and thereby participated on equal terms with the other signers in the liability created thereby, the burden of meeting the financial needs of the corporation was distributed according to the interest of the respective signers of such contract. We think such was clearly the intention of the parties. On the other hand, if said contract imposed merely a per capita liability upon the signers thereof, the total indemnity promised thereby, on account of the express stipulation that the liability of each signer should not exceed $50 for each share owned by him, would have amounted in the aggregate to only $33,037.50, or only a little over one-half of the total liability contemplated. The conclusion that no such construction of said contract was intended by the parties thereto at the time seems irresistible.

Defendants' contention, however, must fail for another reason. This case was before this court at a prior term on appeal from an order of the trial court overruling pleas of privilege interposed by certain defendants herein. Pending such appeal the proper construction of the contract sued on was presented to the Supreme Court by certificate for determination, and that court held that each of the signers of such contract became by the terms thereof liable to the directors, jointly and severally, for the entire sum paid out by them as indorsers of the paper of the corporation, and that the provision for the payment by each signer of his pro rata part of such amount merely fixed the liability of such signers as between themselves. Miller v. Bush (Tex. Com. App.) 24 S.W.(2d) 23. See also, in this connection, Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin, 95 Wis. 111, 69 N. W. 354, 356, 60 Am. St. Rep. 86. Since defendants were jointly and severally liable to plaintiffs for the unpaid balance necessary to reimburse them as indorsers, they are in no position to complain of the fact that Corriher was not considered in the original apportionment of liability and no part of the amount so paid by plaintiffs charged against him, nor of the fact that because of his insolvency they dismissed him from this suit. The amount per share due by each of the signers to such contract, excluding the shares held by Corriher, was $27.40. Plaintiffs' recovery herein is upon that basis and defendants have no reasonable ground to complain of the same.

Defendants present a proposition in which they contend that the court erred in awarding plaintiffs a recovery for attorney's fees. The court not only rendered judgment against the defendant Miller for the sum of $13,700, the amount charged against him in said apportionment, but also for an additional sum of $1,370 as attorney's fees. The court also rendered judgment against Connell's executrix for the sum of $3,562, the amount charged against him in such apportionment, and for an additional sum of $356.20 as attorney's fees. The contract sued on bound the signers thereto to reimburse the plaintiffs for the amount paid by them as indorsers of the paper of the corporation, but was silent concerning the payment of attorney's fees. The general rule is that signers of indemnity or guaranty contracts are not liable for attorney's fees incurred in suits to enforce the same, in the absence of an express stipulation for such liability. Pittsburgh, C., C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co. (C. C. A.) 109 F. 279; Id. (C. C. A.) 107 F. 781; Cooke v. Mesmer, 164 Cal. 332, 128 P. 917, 921, par. 7; Abbott v. Brown, 131 Ill. 108, 22 N. E. 813; Holmes v. A. J. Schwab & Sons, 141 Ga. 44, 80 S. E. 313; Sheppard v. Daniel Miller Co., 7 Ga. App. 760, 68 S. E. 451; 28 C. J. 967. Defendants' contention is sustained.

The judgment of the trial court is reformed by excluding from plaintiffs' recovery the attorney's fees aforesaid, amounting in the aggregate to $1,726.20, and as so reformed is affirmed.