Vincent GUBITOSI, Appellant,

v.

BUDDY SCHOELLKOPF PRODUCTS, INC., et al., Appellees.

No. 972.

Court of Civil Appeals of Texas, Tyler.

Dec. 2, 1976.

**530**

Joe N. Boudreaux, Smith, Rachal, Schutze, Sanderson & Boudreaux, Dallas, for appellant.

John H. Martin, Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

DUNAGAN, Chief Justice.

This is a note guaranty case involving the exercise of in personam jurisdiction under Art. 2031b, Tex.Rev.Civ.Stat.Ann., by a Texas court over an individual guarantor, a nonresident of Texas. This appeal is brought from the final judgment of the 101st Judicial District Court of Dallas County, Texas, against appellant Vincent Gubitosi, guarantor, and defendant below (hereafter called "appellant") and in favor of appellees, Buddy Schoellkopf Products, Inc. and Red Head Brand Corporation, plaintiffs below (hereafter referred to jointly as "appellees" and individually as "appellee Schoellkopf" or "appellee Red Head").

There was complete identity of interest among appellees to warrant their bringing suit as co-plaintiffs, to which appellant took no issue. Appellee Red Head is a subsidiary corporation of appellee Schoellkopf. Appellees sued appellant, as guarantor, for recovery on two promissory notes payable to appellees. The notes were made by Parker Merchandising Corporation (hereafter called "Parker Corporation") and signed by appellant Vincent Gubitosi in his capacity as president of Parker Corporation. Appellant, also a major stockholder of Parker Corporation, signed two guaranty agreements making himself individually liable for payment of the two notes. Parker Corporation and appellant were both residents of the State of New York.

Appellant, pursuant to Rule 120a, T.R. C.P., made a special appearance to object to the court's exercise of in personam jurisdiction over him, alleging that he was not amenable to process issued by a Texas court. In his special appearance appellant alleged that he was not a resident of Texas, that he had never been in Texas nor transacted business in Texas, and that any transactions had with appellees were performed in the State of New York. Appellant urged the trial court to dismiss the suit since there was not minimum contacts to constitution-

ally support jurisdiction over his person by a Texas court.

The trial court overruled the appellant's special appearance, and all parties proceeded to trial.

After a non-jury trial, the court rendered its judgment awarding to appellee Schoellkopf $15,217.48 and to appellee Red Head $8,491.96, and providing that both appellees were to receive contractual interest and ten percent attorney fees, plus legal interest on the aggregate amounts. The court overruled appellant's motion for new trial and made its findings of fact and conclusions of law. Appellant brings this appeal alleging twenty-four points of error committed by the trial court.

The material facts are as follows. Appellees are incorporated under the laws of the State of Texas and have their principal place of business in Dallas. For several years prior to this lawsuit, appellees had been selling and shipping sports-related goods to Parker Corporation on an open account basis, with terms of payment per invoice being the net amount due within ninety days after shipment. Early in 1973 appellees sold and shipped assorted sporting goods from Texas to Parker Corporation in New York and billed Parker Corporation in the usual invoice form and procedure. Several months thereafter Parker Corporation went into arrears in payment of these invoices and the same became past due. Appellees stopped further shipments on credit to Parker Corporation until the accounts were cleared up, and notified Parker Corporation that they were considering legal action to recover the accounts in arrears.

Over a period of months prior to November 19, 1976, appellees' credit manager, John Schleif, whose job was to approve and periodically review credit for appellees' vendees and monitor collection problems, began efforts to collect the delinquent accounts owed by Parker Corporation. Schleif was contacted by Carmin Grosso, operations manager of Parker Corporation, about the possibility of appellees accepting Parker Corporation's promissory notes to clear up the delinquent accounts. Acting

through Schleif, appellees agreed to accept promissory notes and forbear from initiating legal action to collect the delinquent accounts.

Schleif advised Grosso that appellees would not accept any notes without a personal guaranty of payment by appellant herein, who, as mentioned earlier, was president and major stockholder of the Parker Corporation. The note negotiations were made primarily through long distance telephone conversations between Schleif (representing appellees) and Grosso. There is no evidence in the record that Schleif discussed the notes and guaranties personally with appellant.

Schleif, who was the only witness called in the trial, testified that he mailed Grosso the figures to be encompassed by the notes. Two notes prepared by Grosso were mailed from New York to Texas, but appellees refused those notes because they did not comply with the original agreement between the parties and the notes were not accompanied by guaranties made by appellant. Appellees through Schleif had stressed that they would not accept the notes without the personal guaranties of appellant.

By letter dated November 19, 1973, Schleif notified Mr. Richard Nigro, another employee of Parker Corporation, that the two notes were being refused. Enclosed with the letter were two notes and two guaranty forms prepared by Schleif. These notes and guaranties were executed by appellant and returned to appellees by Ralph Esposito, assistant controller of Parker Corporation, accompanied by Esposito's letter dated December 26, 1973. There is no evidence that appellant ever corresponded through the mails or otherwise with appellees concerning the notes and guaranties.

The note payable to appellee Schoellkopf was in the principal amount of $15,217.48, and the note payable to appellee Red Head was in the principal amount of $8,491.96. Both notes were due on April 1, 1974, with interest at the rate of 12% per annum. Each note provided that it was payable at the "Mercantile Nat'l Bank—Dallas, Texas"

and additionally provided that in the event of default that ten percent of the principal and interest due on the notes would be added as collection fees. The note was signed by appellant in his capacity as president of Parker Corporation.

The guaranties provided as follows:

"I, Vincent Gubitosi, do guarantee, as an individual, payment for the trade note[s] payable to . . . [appellees] . ., Dallas, Texas by Parker Distributors, New Rochelle, New York, which . . [are] . . . due April 1, 1974 in the amount[s] of . . . [giving amount] . . . with 12% interest per annum.

"It is also especially agreed that the guarantor will pay all costs incurred by . . . [appellees] . . . if it should become necessary to collect funds under . . . [these guaranties] . . by suit or in probate or bankruptcy proceedings.

> x (signature)
> Vincent Gubitosi"

[notary acknowledgment dated December 21, 1973]

It is significant that each guaranty did not expressly incorporate or adopt as a whole the place of performance provisions of each note.

Both notes were dated November 19, 1973, whereas the guaranties were dated December 21, 1973. However, the notes and guaranties were actually executed on the same date, December 21, 1973, and mailed together in the same envelope from New York to appellees in Dallas, Texas.

On April 1, 1974, the notes were not paid. Parker Corporation at that time was, or soon thereafter became, insolvent and bankrupt, and accordingly was not joined in this suit. Appellees sued appellant for payment of the notes. After his special appearance to contest jurisdiction was overruled, appellant filed his first amended original answer setting up the following defenses: (1) that he was not amenable to suit within the State of Texas; (2) that the guaranties were without legal consideration and therefore not legally binding; and (3) that he

was not obligated to pay appellees' attorney fees because the same were not provided for in the guaranties.

Appellant's twenty-four points of error deal with the court's decisions on the three defenses raised in his answer. We shall first consider appellant's points of error dealing with jurisdictional issues. Points of error 1 through 4 allege that the court erred in overruling appellant's special appearance and motion to dismiss under Rule 120a, T.R.C.P., because appellant (1) was not personally served in Texas; (2) had not engaged in business in Texas; (3) did not have sufficient minimum contacts to support in personam jurisdiction over him or valid service of process made upon him; and (4) was denied due process of law when the Texas trial court assumed jurisdiction over appellant without his having sufficient minimum contacts with Texas. Points of error 5 through 13 allege that the court's findings of fact numbers III, IV and XXI were not supported by any evidence, and, alternatively, insufficient evidence, or that the said findings were against the great weight and preponderance of the evidence presented.

The court found the following facts, among others, dealing with jurisdictional issues:

(1) that appellant was a nonresident natural person who had engaged in business and transacted business in the State of Texas, and who had not maintained a regular place of business in the State of Texas or a designated agent upon whom service may be had (Findings of Fact No. III);

(2) that the appellees' cause of action arose out of appellant's business in the State of Texas (Findings of Fact No. IV);

(3) that the appellant was properly served with citation by serving the Secretary of State of the State of Texas (Findings of Fact No. V); and,

(4) that appellant executed two guaranty agreements that were to be performed in whole or in part in the State of Texas (Findings of Fact No. XXI).

The trial court held in its conclusions of law that it had jurisdiction over the person of appellant because the appellant had engaged in and transacted business in the State of Texas and had entered into contracts performable in whole or in part in the State of Texas, out of which contracts appellees' cause of action arose.

Art. 2031b, sec. (3), Tex.Rev.Civ.Stat. Ann., provides that "Any . . . nonresident natural person that engages in business in this State, . . . and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such . . non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such . . . non-resident natural person is a party or is to be made a party."

Section 4 of Art. 2031b provides that ". . . any . . . non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, . . . ."

We feel it is unnecessary to trace the evolution of long arm personal jurisdiction by a court over a nonresident defendant, a doctrine thoroughly established by the United States Supreme Court.[1] However, there are only general guidelines concerning the applicability of the "minimum contacts" test and what does or does not "offend the traditional notions of fair play and substantial justice." ". . . [T]he

1. See *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance* *Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

broadened concept of in personam jurisdiction over nonresidents does not readily lend itself to the promulgation of an infallible formula automatically determinative of every case." 27 A.L.R.3d 417 (1969).

■ Courts must now make a general constitutional inquiry as to "whether a given nonresident defendant had 'minimum contacts' with the forum state, within 'traditional notions of fair play and substantial justice,'" against the background of the facts existing in the particular case. *Hoppenfeld v. Crook*, 498 S.W.2d 52, 56 (Tex.Civ.App.—Austin 1973, ref'd n.r.e.).

■ The court must first determine that the nonresident defendant is amenable to process under the Texas Long Arm Statute, art. 2031b; and second, whether the exercise of jurisdiction over the nonresident defendant pursuant to Art. 2031b would, under the particular facts, violate the due process clause of the 14th Amendment to the United States Constitution. *Estes Packing Co. v. Kadish & Milman Beef Co.*, 530 S.W.2d 622, 623 (Tex.Civ.App.—Fort Worth 1975, n.w.h.); *Cohn-Daniel Corp. v. Corporacion De La Fonda*, 514 S.W.2d 338, 341 (Tex.Civ.App.—Eastland 1974, n.w.h.), citing *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973), and *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (5th Cir. 1966). It is well established that the reach of Article 2031b is as broad and far as the constitutional standard of minimum contacts allows. *Jetco Electronic Industries, Inc.*, supra; *Atwood Hatcheries*, supra; *Estes Packing Co.*, supra.

■ Under the first determination, we find that the appellant was amenable to service under Article 2031b. Section 3 of Article 2031b provides for long arm service over a nonresident natural person who engages in or does business in the State of Texas. Section 4 of Article 2031b defines "doing business" as the entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part within Texas.

The notes involved in this suit were the product of an agreement negotiated (via long distance telephone and regular U. S. mail) between appellees' credit manager (Schleif) in Texas and officers of Parker Corporation (Grosso, Nigro, and Esposito) in New York. The record shows no participation by appellant in the actual discussions between the parties; however, appellant did sign the notes in his capacity as president of Parker Corporation.

As part of the transactions appellees demanded that appellant personally guarantee payment of the notes. Appellees' credit manager prepared the notes and guaranty agreements and mailed them to New York in the same envelope. Appellant signed the guaranty agreements, acknowledged his signatures before a notary public, and gave them to a subordinate who mailed them together with the notes to appellees in Texas in the same envelope.

■ The fact that the *notes* were payable in Dallas, Texas is a critical fact. The guaranty agreements stated that "I, Vincent Gubitosi, do guarantee, as an individual, *payment* for the trade note[s] . . .." (Emphasis added.) Appellant contends that the guaranty agreements do not require him to make payments at the place of payment required by the notes. We disagree.

■ In reading the guaranty agreements, we find no qualifications or limitations on appellant's duty to pay the notes in the event of default according to the terms and conditions provided by the notes. The liability of appellant, as guarantor, created by the guaranty agreements is measured by the liability of the principal on the notes, "unless a more limited or more extensive liability is specified by the guarantor." *Cullum v. Commercial Credit Co.*, 134 S.W.2d 822, 824 (Tex.Civ.App.—Amarillo 1939, n.w.h.); and followed in *Rost v. First National Bank of Gonzales*, 472 S.W.2d 579, 581 (Tex.Civ.App.—Corpus Christi 1971, n.w.h.); *Laukhuf v. Associates Discount Corporation*, 443 S.W.2d 725, 727 (Tex.Civ.App.—Dallas 1969, n.w.h.); *Walter E. Heller & Co. v. Allen*, 412 S.W.2d 712, 721

(Tex.Civ.App.—Corpus Christi 1967, ref'd n.r.e.).

■ Accordingly, because of appellant's guaranty of payment at the "Mercantile Nat'l Bank—Dallas, Texas," he entered into a contract performable "in whole or in part" in the State of Texas, and, as such, met the definition of "doing business" as per Article 2031b, section 4. Appellant did not maintain a place of regular business in this State or a designated agent upon whom service may be made; thus, service was proper to be made upon the Secretary of State of Texas according to section 3 of Article 2031b. The record shows that the appellant received by mail in New Rochelle, New York a copy of appellees' original petition.

■ After deciding that appellant was amenable to process under Article 2031b, the second determination this court must make is whether the exercise of jurisdiction over the nonresident defendant pursuant to Article 2031b would, under the particular facts of this case, violate the due process clause of the 14th Amendment to the United States Constitution. The fact that appellant is amenable to process under the long arm statute is not conclusive of due process. *Estes Packing Co.,* supra, and cases cited therein.

The facts as they exist in the record, and as the trial court correctly found, are conclusive that appellant is not denied his constitutional due process privileges by having to defend against appellees' cause of action in the courts of Texas.

A case similar to, and almost on point with, this case is *National Truckers Service, Inc. v. Aero Systems, Inc.,* 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, ref'd n.r.e.). In that case, plaintiff National sued defendant Aero, a Florida corporation, seeking to collect a debt arising out of a written guaranty agreement. National had done business with a corporate subsidiary of Aero. The subsidiary had become delinquent in its accounts payable to National. Aero, acting through its president, agreed to guarantee payments of the debts. A guaranty agreement was executed by Aero and mailed to National's offices in Fort Worth, Texas. After further default, National sued Aero on the guaranty agreement in the courts of Texas. The trial court sustained Aero's special appearance and dismissed the suit. On appeal by National, the Court of Civil Appeals reversed the trial court's dismissal and remanded the cause for trial in Texas, holding that Aero had "sufficient minimum contacts with the State of Texas that the maintenance of this suit in Texas does not offend traditional notions of fair play and substantial justice."

The chief distinction between *National Truckers Service, Inc.* and this case is that in the former the guaranty agreement specifically designated a place of payment in Texas, and it is this distinction upon which appellant relies in urging that *National Truckers Service, Inc.,* supra, does not apply here. In light of the cases quoted earlier concerning the liability of a guarantor to perform according to the principal's obligations unless the guaranty agreement limits that liability, we disagree with appellant and hold that the decision of *National Truckers Service, Inc.* is persuasively correct and applicable here.

■ Three basic factors under the "minimum contacts" test should coincide if jurisdiction over a nonresident defendant is to be maintained, according to *O'Brien v. Lanpar Company,* 399 S.W.2d 340, 342 (Tex. 1966), quoting *Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963):

" '(1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective par-

ties, and the basic equities of the situation.' "

In this case, the parties stipulated that the "guaranty agreements . . . in this case were in fact placed in the United States Mails by officers, servants or employees of Parker Merchandising Corporation in the State of New York other than the defendant in this case and forwarded by the mails to the plaintiff corporations and received by them in the State of Texas." Appellant places emphasis on the fact that he did not personally mail the guaranty agreements to appellees in Texas, but that other "officers, servants or employees" did so, and as such, urges that he did not "purposely do some act or consummate" this transaction in the forum state by mailing the guaranty agreements himself. The fact that appellant did not personally mail the agreements is immaterial.

■ Section 4 of Article 2031b provides that a "non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas . . . ." There is no requirement that the nonresident be the actual depositor of the contract in the mail. And even if there were such a requirement, "Under the Texas Long-Arm Statute . . . place or time of execution, consummation, or delivery is inconsequential, and it is performance, contemplated or accomplished, which is important." *Atwood Hatcheries, supra*, at page 852; *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974). Thus, we find that appellant did purposefully consummate some transaction in the forum state.

This cause of action certainly arises from the transaction, being based solely on the guaranty agreements themselves.

The third factor under the *O'Brien* case requires that the "assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice," in light of several considerations. Under this factor, the court must consider the "quality, nature, and extent of the activity in the forum state." The signing of the guaranty agreements by appel-

lant was a deliberate and not a fortuitous act, and this itself is an operative consideration. *Products Promotions, Inc.*, supra, at page 496. The trial court found, and the record supports the finding, that appellant's personal guaranty was part of the inducement to Plaintiffs to enter into the (note) agreements with Parker Merchandising Corporation, and that appellees would not have accepted the notes without appellant's personal guaranty.

■ The court must additionally consider the "relative convenience of the parties," the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. We have examined the record closely and find no undue inconvenience to appellant in defending this cause in Texas; nor is there any exceptional advantage or disadvantage afforded either party by the laws of Texas. We most strongly feel in light of the facts present that the basic equities of the situation award appellees the right to prosecute their cause of action in Texas.

We have carefully examined the trial court's findings of fact numbers III, V, and XXI and have concluded that they are adequately supported by evidence in the record, and that they are not against the great weight and preponderance of the evidence. Accordingly, appellant's points of error 1 through 13 dealing with these fact findings and the court's overruling of appellant's motion for special appearance are overruled.

Appellant's points of error numbers 14 through 17 allege that appellant is not liable on the guaranty agreements because of a want of legal consideration, and complain of the lack, insufficiency and weight of the evidence supporting the trial court's finding number XII that separate consideration existed for the guaranty agreements.

Appellant did not object or allege evidential error to other findings of fact made by the trial court dealing with consideration and inducement in the execution of the guaranty agreements, summarized as follows:

1. that Parker Corporation owed debts to appellant which were past due;

2. that appellant granted Parker Corporation an extension of time in which to repay such debt;

3. that in return for the notes appellant agreed not to institute legal proceedings against Parker Corporation and against appellant individually;

4. that appellees had reason to believe appellant was guilty of fraudulent actions, and at one time had threatened to institute legal proceedings against appellant;

5. that appellees would not have accepted the notes without appellant's personal guaranty;

6. that appellant's guaranties were part of the inducement to appellees to enter into the note agreements;

7. that appellant stood to benefit personally from any consideration passing to Parker Corporation, of which he was president; and

8. that appellees forebore from suing appellant and Parker Corporation because of the guaranty agreements as well as the notes.

Fact findings which are not challenged on appeal are binding on the parties and must be accepted by the Court of Civil Appeals. *Gragg v. Cayuga Independent School Dist.*, 525 S.W.2d 32 (Tex.Civ.App.—Tyler 1975, affirmed, Sup., 539 S.W.2d 861); *Curtis v. National Cash Register Co.*, 429 S.W.2d 909 (Tex.Civ.App.—Amarillo 1968, ref'd n.r.e.).

Appellees' agreement to forebear from filing suit against appellant and Parker Corporation and appellees' granting of an extension of time to Parker Corporation to pay its past due accounts owing to appellees constitute sufficient legal consideration to support the personal guaranty agreements. *Estes v. Oilfield Salvage Co.*, 284 S.W.2d 201 (Tex.Civ.App.—Dallas 1955, n.w.h.); *Swilley v. City Inv. Co.*, 288 S.W. 485 (Tex. Civ.App.—Galveston 1926, writ ref'd); *Kraker v. Bettman-Kleinhauser Clothing Co.*, 12 S.W.2d 247 (Tex.Civ.App.—San Antonio 1928, n.w.h.).

Where a contract of guaranty is in writing and signed by the guarantor, its existence imports a consideration. *Diamond Paint Co. of Houston v. Embry,* 525 S.W.2d 529, 533 (Tex.Civ.App.—Houston [14th Dist.] 1975, ref'd n.r.e.). The record indicates that the notes and guaranty agreements were mailed to New York and returned after signing by mail to Texas together in one envelope. It is accurate to state that they were executed contemporaneously. Where a note and guaranty agreement pursuant to the note are executed contemporaneously, if there is consideration for the note there is consideration for the guaranty. *Diamond Paint Co. of Houston,* supra, at page 533; *Dean v. Allied Oil Co.,* 261 S.W.2d 900 (Tex.Civ.App.—Waco 1953, writ dism'd).

We have examined the record and have found that the court's finding of fact concerning the existence of separate consideration is supported by the evidence and is not against the great weight and preponderance of the evidence. We further agree with the trial court's conclusions of law that separate consideration was not necessary. Accordingly, appellant's points of error numbers 14 through 17 are overruled.

Appellant's final points of error numbers 17 through 24 complain of the court's award to appellees of attorney fees against appellant based upon the provisions in the notes.

The guaranty agreements provided "It is especially agreed the guarantor will pay all costs incurred by . . . [appellees] . . . if it should become necessary to collect funds under . . . [these guaranties] . . . by suit or in probate or in bankruptcy proceedings." Appellant urges that appellees are not entitled to recover attorney fees against appellant due to the existing legal distinction between "costs" and "attorney fees." Appellant contends that the guaranty agreements, being separate contracts, entitle appellees to recover only their costs of court and not attorney fees.

Appellant cites case law and Texas Jurisprudence to support the legal distinction

between costs and attorneys fees, and while we agree with the decisions reached in the cases cited by appellant, we feel they are not controlling here.

It is our opinion, and obviously the trial court so decided that the guaranty agreements in question were absolute. At 27 Tex.Jur.2d "Guaranty," sections 5 & 6 (1961) the following definition of absolute guaranty is found:

"An absolute guaranty is one that is conditioned solely on the event of default by the principal obligor of fulfillment of the duty the performance of which is guaranteed. A guaranty undertaking is treated as absolute if it is unqualified or expresses no other condition of its enforceability than default of performance of his duty by the principal obligor . . . ..

. . . . .

" 'Guaranty of payment' is used as the equivalent of the term 'absolute guaranty' in reference to the payment of a debt, . . . .. Since an express and unqualified guaranty of 'payment' refers solely to the identical condition on which the instant enforceability of any absolute guaranty depends, it is treated as an absolute guaranty."

Appellant cites *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428 (Tex.1971) which held that "the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract." That was a case in which the guarantor placed limitations on his duty to pay, whereas in the instant situation the guaranty is one of unconditional payment. We feel the McKnight case is correct in a situation where the obligee did not fulfill the conditions necessary to cause the guarantor's liability to commence.

Appellant did not cite *Miller v. Bush,* 42 S.W.2d 156 (Tex.Civ.App.—Waco 1931, writ ref'd) which held, at page 159, that "The general rule is that signers of indemnity or guaranty contracts are not liable for attorney's fees incurred in suits to enforce the same, in the absence of an express stipulation for such liability." Cer-

tainly, where a guaranty agreement contains an express stipulation that the guarantor is not liable for attorney fees, there is no liability for payment of same. *Estes v. Oilfield Salvage Co.,* supra. This was, in effect, the situation that existed in the *Miller* case cited above. In that case, the indemnity agreements sued upon contained a clause limiting the signer's liability, stating that the signer would not "in any event be liable in a greater sum than the amount set opposite . . . [their] . . . name[s] . . . .." Otherwise, the decisions in other states are in disagreement as to the liability of the guarantor "where the contract of guaranty is silent about costs of collection but the primary obligation provides that such costs shall be payable . . . .." 4 A.L.R.2d 138 (1949).

In a situation such as this, where the principal agreements provided for attorney fees in the event of default, we feel that an absolute guaranty without limitation of the principal agreements also obligates the guarantor to pay the attorney fees. *McGhee v. Wynnewood State Bank,* 297 S.W.2d 876 (Tex.Civ.App.—Dallas 1956, ref'd n.r.e.); *Dean,* supra. Had there been no express provision allowing attorney fees in the notes, then payment of same could not be required of the guarantor of said notes. *Blume v. National Homes Corp.,* 441 S.W.2d 176 (Tex.1969).

Accordingly, since the notes provide for attorney fees, and since the guaranty agreements are an absolute unconditional guaranty of payment, and no lesser liability is specified by the guaranty agreements, in light of our reasoning and application of *Cullum,* supra, and cases cited therewith, the liability of appellant, as guarantor, created by the guaranty agreements is measured by the liability of the principal on the notes.

We have examined the entire record and have concluded that there is evidence adequately supporting the trial court's findings and judgment and that such findings are not against the great weight and preponderance of the evidence. Appellant's points of error 17 through 24 are overruled.

The judgment of the trial court is affirmed.

Affirmed.