J.D. FIELDS & COMPANY,
INC., Appellant,

v.

W.H. STREIT, INC. and James
E. Streit, Appellees.

No. 01–00–00055–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 25, 2000.

Rehearing Overruled July 6, 2000.

Thomas Clarke, Houston, for appellant.

Julia M. Adams, Houston, for appellee.

Panel consists of Justices COHEN, HEDGES, and ANDELL.

## OPINION

ADELE HEDGES, Justice.

Plaintiff, J.D. Fields & Company, Inc., sued W.H. Streit, Inc. (defendant company) and James E. Streit (defendant guarantor) for breach of contract and quantum meruit. The trial court granted both defendants' special appearances and rendered a final judgment of dismissal. We reverse and remand.

### Facts

Plaintiff is a Texas corporation that sells steel sheet piling. Its principal office is in Houston, Texas. Defendant company is a New Jersey corporation with its principal place of office in New Jersey. Defendant guarantor is the president of defendant company and is a resident of New Jersey.

Plaintiff's Pennsylvania sales office initiated negotiations on a public works project by faxing its price list to defendant company in New Jersey. Defendant company responded by sending a purchase order of acceptance to plaintiff's Pennsylvania office. Plaintiff's Pennsylvania office then forwarded the purchase order to plaintiff's Houston office. Based on a credit check, plaintiff refused to extend credit to defendant company.

Defendant guarantor telephoned plaintiff's Houston office and offered to personally guarantee the indebtedness of defendant company. When plaintiff accepted, defendant guarantor sent his written, personal guaranty by fax in the form of a letter addressed to plaintiff's Houston office. The letter stated as follows:

I would like to take this opportunity to thank you for reconsidering and approving the credit terms of net 30 days. You have my personal guarantee that these terms will be met.[1]

Defendant company faxed a copy of the performance bond on the public works project to plaintiff's Houston office. The steel pilings purchased by defendant company were manufactured in the United Kingdom, delivered to Pennsylvania, and then sent to defendant company's project site in New Jersey. Defendant company mailed a check for partial payment of $325,634 to plaintiff in Houston.

Plaintiff sued both defendants in Harris County, Texas for an outstanding balance of $25,861 on the contract. The trial court granted both defendants' special appearances and dismissed the claims against them. The court filed findings of fact and conclusions of law as follows:

(1) Defendants do not have sufficient minimum contacts with Texas to support jurisdiction.

(2) The small number of contacts with Texas in the business transaction between the parties do not show any purposeful availment of the laws of Texas.

(3) Jurisdiction over defendants will offend traditional notions of fair play and justice.

Plaintiff contends that there is no evidence or insufficient evidence to support these findings.

### Personal Jurisdiction

On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *James v. Illinois Cent. R.R.,* 965 S.W.2d 594, 596 (Tex.App.—Houston [1st Dist.] 1998, no pet.). To sustain a special appearance, the nonresident defendant must negate all bases of personal jurisdiction.

---

1. Based on this letter, we disagree with defendants' contention that there was no evidence of a personal guarantee.

*CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996).

■ A Texas court may exercise jurisdiction over a nonresident defendant if the following two conditions are met: (1) the Texas long-arm statute must authorize the exercise of jurisdiction and (2) the exercise of that jurisdiction must be consistent with federal and state guarantees of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990).

### A. The Texas Long–Arm Statute

The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Plaintiff contends that the Texas long-arm statute provides jurisdiction because defendants contracted "by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." *Id.* at § 17.042(1).

■ The broad statutory language permits the Texas long-arm statute to reach as far as the federal constitutional requirements of due process will allow. *CSR Ltd.,* 925 S.W.2d at 594. Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *See Guardian Royal Exch. Assurance v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991).

### B. Federal Due Process

Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The United States Supreme Court divides the due process requirements into two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

### 1. Minimum Contacts

■ The first part of the due process analysis is whether the nonresident defendant has purposely established "minimum contacts" with the forum state. *CSR Ltd.,* 925 S.W.2d at 594–95. We consider whether the defendant has purposely availed himself of the benefits and protections of conducting business within the forum state. *Id.* Based on his contact with the forum state, a defendant must reasonably expect to be haled into a Texas court. *Project Eng'g USA Corp. v. Gator Hawk, Inc.,* 833 S.W.2d 716, 721 (Tex.App.— Houston [1st Dist.] 1992, no writ).

■ A defendant's contacts with a forum can give rise to either (a) general jurisdiction or (b) specific jurisdiction. *CSR Ltd.,* 925 S.W.2d at 595.

### a. General Jurisdiction

■ General jurisdiction occurs when a nonresident defendant's contacts are continuous and systematic, allowing the forum state to exercise personal jurisdiction over the defendant even if the cause of action did not arise out of the contacts with the state. *CSR Ltd.,* 925 S.W.2d at 595.

■ Defendant company is not licensed to do business in Texas, does not maintain a registered agent for service of process in Texas, does not own or lease property in Texas, has never solicited employees in Texas, has no Texas bank account, does not advertise in any medium intended to reach Texas, and does not pay Texas taxes. Moreover, defendant company has never had any offices, employees, mailing addresses, or telephone listing in Texas. *See J & J Marine, Inc. v. Le,* 982 S.W.2d 918, 926 (Tex.App.—Corpus Christi 1998, no writ). To the extent applicable, the same is true of defendant guarantor.

Plaintiff contends, "Prior to the transaction made the basis of this lawsuit, [defendants] had purchased materials from [plaintiff] in Texas." The record, however, establishes that defendants "had purchased materials from [plaintiff] before, but in much smaller quantities." There is no evidence that this prior purchase had any connection to Texas or plaintiff's Texas office.

We hold that defendants' prior contacts with Texas were not so systematic or continuous to serve as the basis for general jurisdiction in a Texas court. Because defendants' contacts were based on one business transaction made the basis of this lawsuit, we turn to specific jurisdiction.

**b. Specific Jurisdiction**

 Specific jurisdiction occurs when a defendant's alleged liability arises from or is related to an activity conducted within the forum state. *CSR Ltd.*, 925 S.W.2d at 595. We therefore focus on the relationship among the defendants, the forum, and the litigation. *Schlobohm*, 784 S.W.2d at 357.

To establish minimum contacts, plaintiff has improperly focused on its own conduct. Specifically, plaintiff contends that its Houston office performed the following: ordered steel from the British mill, arranged shipping to the United States, coordinated the product coating, arranged transportation to defendants in New Jersey, received bills of lading, and prepared invoices.

 A plaintiff's unilateral actions in soliciting a contract or in carrying out the terms of a contract are irrelevant to a due process consideration. *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex.1977). It is the actions of the defendant, not the plaintiff, that are relevant to a minimum contacts analysis. *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 675 (Tex.App.—Dallas 1993, writ dism'd by agr.). Accordingly, we turn to the contacts with Texas by defendant company and defendant guarantor.

Defendant company's contacts with Texas include: (1) entering into a purchase contract with a Texas company, in which the payment invoice specifically provided, "All invoices are due and payable at our Houston Office, Harris County, Texas"; (2) faxing a copy of the performance bond on the public works project to plaintiff's Houston office; and (3) mailing a check for partial payment of $325,634 to plaintiff's Houston office.

Defendant guarantor's contacts with Texas include: (1) telephoning plaintiff's Houston office with an offer to personally guarantee the defendant company's indebtedness in order to induce plaintiff to contract with defendant company; (2) personally guaranteeing the indebtedness of defendant company that was payable to Houston; and (3) faxing a letter evidencing his personal guaranty to plaintiff's Houston office.

Defendants contend that these contacts do not satisfy due process requirements. For example, defendants cite *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir.1983) (applying Texas law). In *Hydrokinetics*, the nonresident defendant made payments to Texas, corresponded and made telephone calls to Texas, visited Texas, and accepted the contract in Texas. *Id.* at 1029–30. In light of a contractual provision that Alaska law governed disputes, these contacts were insufficient to establish minimum contacts with Texas. *Id.*

Similarly, in *3–D Electric Co., v. Barnett Constr. Co.*, 706 S.W.2d 135, 137 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), Texas had no jurisdiction over a Tennessee defendant who, as the general contractor to build a motel in Colorado, made an oral contract with a Texas corporation for electrical work. The court held the defendant's contacts with Texas—an oral contract with a Texas corporation, payments to the Texas corporation, telephone calls, and correspondence to Texas—were not

enough to establish minimum contacts. *Id.* at 142–43.

■ We recognize that personal jurisdiction is not justified by the single fact that a nonresident contracts with a Texas resident. Nor is it justified by the single fact that a contract is payable in Texas. *See U–Anchor,* 553 S.W.2d at 763. However, the most critical fact in this case, which was not addressed in the cases cited by defendants, is that defendant guarantor telephoned plaintiff's Houston office with an offer to personally guarantee the defendant company's indebtedness in order to induce plaintiff to contract with defendant company. While there is a divergence of authority on the amenability of a nonresident guarantor to the in personam jurisdiction of the forum court, Texas cases addressing the issue have held that a nonresident guarantor is subject to suit in Texas.[2]

For example, in *National Truckers Service, Inc. v. Aero Systems, Inc.,* 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, ref'd n.r.e.), National sued Aero, a Florida corporation, to collect a debt arising from a written guaranty agreement. Acting through its president, Aero offered to guarantee the debts of its Texas subsidiary. *Id.* at 459. Aero executed and mailed the guaranty agreement to National's offices in Fort Worth, Texas. *Id.* The guaranty agreement specifically designated the place of payment in Texas. *Id.* After default, National sued Aero on the guaranty agreement in Texas. *Id.* The court of civil appeals held that Aero had sufficient minimum contacts with Texas to give rise to specific jurisdiction. *Id.* at 460.

Similarly, in *Gubitosi v. Buddy Schoellkopf Products, Inc.,* 545 S.W.2d 528 (Tex. Civ.App.—Tyler 1976, no writ), a New York guarantor was subject to suit in Texas. Gubitosi was a resident of New York and president of a New York corporation.

*Id.* at 531. He had no offices in Texas and had never even been to Texas. *Id.* To induce a Texas corporation to enter into a note agreement with his New York corporation, Gubitosi executed guaranty agreements that made him individually liable for his corporation's promissory notes. *Id.* at 532. Gubitosi's employee mailed the guaranty agreements and the notes from New York to Dallas, Texas. *Id.* at 534. The notes specifically provided for payments to Dallas, Texas. *Id.* Although the guaranty agreements did not designate a place of payment, the court held that by implication, the guaranty agreements likewise provided for payment to Dallas, Texas. *Id. But see Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 831 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The contacts were sufficient to satisfy the due process minimum contacts test. *Gubitosi,* 545 S.W.2d at 532.

The Fifth Circuit similarly held that a Colorado resident was subject to personal jurisdiction in Texas in a suit on a guaranty agreement in *Marathon Metallic Building Co. v. Mountain Empire Construction Co.,* 653 F.2d 921 (5th Cir.1981) (applying Texas law). A Colorado corporation executed and forwarded a continuing guaranty agreement to a Texas corporation. *Id.* at 922. The guaranty agreement provided for delivery of goods "f.o.b. Houston" and for Texas law to govern its construction and performance. *Id.* The Colorado corporation later entered into credit transactions with the Texas entity, purchasing merchandise and taking title in Texas. *Id.* at 923. The Fifth Circuit held that the guaranty purposefully caused business activity in Texas, which was foreseeable to the guarantor Colorado corporation. *Id.*

■ In this case, defendant company contracted with a Texas corporation, agreed that payments are due and payable to plaintiff's Houston office, faxed a copy

---

**2.** Susan M. Kole, Annotation, *Execution, Outside of Forum, of Guaranty of Obligations under Contract to Be Performed Within Forum* *State as Conferring Jurisdiction over Nonresident Guarantors under "Long-arm Statute of Rule of Forum",* 28 A.L.R.5th 664 (1995).

of the performance bond to plaintiff's Houston office, and mailed a check to plaintiff's Houston office. Defendant guarantor called plaintiff's Houston office with an offer to personally guarantee the defendant company's indebtedness in order to induce plaintiff to contract with defendant company, personally guaranteed the indebtedness of defendant company that was payable to Houston, and faxed a letter evidencing his personal guaranty to plaintiff's Houston office. Although the *National Truckers, Gubitosi,* and *Marathon Metallic* cases are not controlling, we follow the reasoning of those cases. Accordingly, we hold that defendants' contacts with Texas are sufficient to meet the due process minimum contacts requirements.

## 2. Fair Play and Substantial Justice

In addition to minimum contacts, the due process analysis requires that we consider whether the exercise of jurisdiction comports with "fair play and substantial justice." *Guardian Royal,* 815 S.W.2d at 228. If applicable, these factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

First, in evaluating the burden on defendant, we believe that there is no undue inconvenience to defendants in defending this cause in Texas. Nor is there any exceptional advantage or disadvantage afforded either party by the laws of Texas. *See Gubitosi,* 545 S.W.2d at 536. Second, Texas has an interest in resolving this dispute which involves a personal guaranty that was voluntarily signed and forwarded to Texas by the defendant guarantor, that invited plaintiff's reliance on it as a basis for credit sales, and that was based on an

invoice specifically payable and later paid in Texas. *See Marathon Metallic,* 653 F.2d at 923. Third, plaintiff, as a Texas corporation with its principal place of business in Texas, can obtain the most convenient and efficient relief in Texas. Fourth, the efficient resolution of this controversy is promoted by adjudication in Texas because the suit against defendant company's surety is still pending in this state. Reconsolidating the suit against defendants with the suit against the surety will avoid duplication of efforts and minimize the possibility of inconsistent findings on common issues. We perceive no particular interest implicating the fifth factor. Accordingly, we hold that the exercise of jurisdiction would not offend the traditional notions of fair play and substantial justice.

## Conclusion

We hold that both defendants had substantial minimum contacts with Texas and that the exercise of jurisdiction would not offend the traditional notions of fair play and substantial justice. Thus, the due process requirements were satisfied to assert personal jurisdiction over defendants. Because defendants are subject to suit in Texas, the trial court erred in dismissing the suit against them.

We reverse the judgment and remand the case to the trial court for further proceedings.