ACCEPTED
01-14-00703-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/27/2015 11:58:45 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00703-CV

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/27/2015 11:58:45 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON

_____

**CHRISTOPH HENKEL**

*Appellant*

**v.**

**EMJO INVESTMENTS, LTD. and H.J. VON DER GOLTZ**

*Appellees*

_____

On appeal from the 215th Judicial District Court, Harris County, Texas
The Honorable Elaine H. Palmer, presiding
Cause No. 2011-44058

_____

**BRIEF OF APPELLEES**

_____

Kelley M. Keller
State Bar No. 11198240
Tracey N. Ellison
State Bar No. 15054720
5120 Woodway, Suite 6019
Houston, Texas 77056
Telephone: 713-266-8200
Facsimile: 713-266-8201
kkeller@ellison-keller.com

*Attorneys for Appellees*

_____

**ORAL ARGUMENT REQUESTED**

_____

March 27, 2015

## REQUEST FOR ORAL ARGUMENT

Appellees respectfully request that the Court grant oral argument. Appellees believe that oral argument will aid the Court in evaluating the facts and legal arguments related to personal jurisdiction.

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ................................................................i

TABLE OF CONTENTS................................................................ ii

TABLE OF AUTHORITIES ................................................................vi

RECORD REFERENCES AND ABBREVIATIONS ............................................1

ISSUE PRESENTED FOR REVIEW ................................................................2

STATEMENT OF FACTS ................................................................3

    A.    TSI and NC12 ................................................................3

    B.    The Lawsuit ................................................................4

SUMMARY OF ARGUMENT ................................................................5

ARGUMENT ................................................................6

    I.    Standard of Review ................................................................6

    II.    State and Federal Due Process Considerations
    and "Minimum Contacts" ................................................................7

    III.    General and Specific Jurisdiction ................................................................11

    IV.    The Trial Court Properly Considered the Appellees' Petition
    and the Evidence and Briefing Submitted in Response to
    Henkel's Special Appearance ................................................................12

    V.    The Evidence Established That the Exercise of Specific Personal
    Jurisdiction over Henkel Was Proper ................................................................15

        A. Henkel Traveled to Texas for Meetings with His Co-Conspirator .......20

        B. Henkel Served as a Director of NC12 ................................................................22

        C. Henkel Invested in a Texas Company ................................................................23

        D. Henkel Previously Consented to a Texas Court's Jurisdiction
        in Another Matter Arising from Board Service
        for Another Company ................................................................23

VI.     Traditional Notions of Fair Play and Substantial Justice Support the
        Exercise of Jurisdiction over Henkel ..........................................................24

CONCLUSION ............................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) ............6

*Am. Type Culture Collection*, 83 S.W.3d at 806......................................................7

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 796-97 (Tex. 2002) .18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ...................................8

*Cartlidge v. Hernandez*, 9 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.]
1999, no pet.) ........................................................................................................9

*Critin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 280 (Tex. App.—14th Dist.
2009, no pet.). .....................................................................................................10

*Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 714 (Tex. App.—
Austin 2000, pet. dism'd w.o.j. .............................................................................7

*Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.............6

*Glenco Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157 (Tex. App.—
Fort Worth 2008, no pet.) ...................................................................................15

*Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d
223, 226 (Tex. 1991)..............................................................................................9

*Hale v. Richey*, No. 10-11-00187-CV, 2012 Tex. App. LEXIS 261, *11 (Tex.
App.—Waco Jan. 11, 2012, no pet.)....................................................................12

*J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 602 (Tex. App.—
Houston [1st Dist.] 2000, no pet.)........................................................................11

*Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.
1992) .......................................................................................................................7

*McCulley Fine Arts Gallery v. "X" Partners*, 860 S.W.2d 473, 480-81 (Tex.
App.—El Paso 1993, no writ)..................................................................................6

*Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex. App.—
Houston [14th Dist.] 1992, no writ).....................................................................17

*Microseismic, Inc. v. TRAC Charitable Remainder Trust*, No. H-12-0118, 2012 U.S. Dist. LEXIS 101108, *19-20 (S.D. Tex. July 20, 2012) ...............................10

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007) ............19

*Oechsner v. Ameritrust*, 840 S.W.2d 131, 136 (Tex. App.—El Paso 1992, writ denied)............................................................................................................6

*Pulmosan Safety Equip. Corp.*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)......................................................................17

*ReedHycalog UK. Ltd. v. United Diamond Drilling Servs.*, No. 6:07 CV 251, 2009 U.S. Dist. LEXIS 77654, *9-10 (E.D. Tex. Aug. 31, 2009)................................11

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ..................................................................17

*Shavers v. Sunbelt Equip. Mktg.*, No. 10-11-00330-CV, 2012 Tex. App. LEXIS 4203, *7-10 (Tex. App.—Waco May 23, 2012, no pet.) ..................................24

*Tobasso v. Bearcom Group, Inc.*, No. 05-11-01674-CV, 2013 Tex. App. LEXIS 7866, *11 (Tex. App.—Dallas June 26, 2013, no pet.). .......................................26

*Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 434 (Tex. App.—Dallas 2012, no pet.) ...................................................................................11

*Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 742 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied)......................................................10

*WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 355 (S.D. Tex. 2011) .......................................................................................................9

*Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.) ...............................................................................................................12

*Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)............................................................................................19

# RECORD REFERENCES AND ABBREVIATIONS

"CR__," refers to the Original Clerk's Record, filed November 24, 2014, indicating the page number of the reference.

"Henkel" refers to Appellant Christoph Henkel.

"Appellees" refers to Appellees Emjo Investments, Ltd. and H.J. von der Goltz.

## ISSUE PRESENTED FOR REVIEW

Whether the District Court correctly overruled the special appearance of a non-resident director of a Texas-based corporation alleged to have engaged in a conspiracy with his co-directors to defraud the investors of the Texas company that he served.

Appellees supplement the Statement of Facts in Henkel's Brief as follows:

**A.      TSI and NC12.**

Texas Syngas, Inc. ("TSI") was incorporated under the laws of the State of Nevada in May 2006 and registered to do business in Texas in June 2008. (CR 225-26). Henkel served on the TSI board of directors at the time the company registered to do business in Texas.[1] (*Id.*).

NC12, Inc. ("NC12") is a Nevada corporation that registered to do business in Texas in August 28, 2009. (CR 228). In 2009, NC12 acquired the assets of TSI. Henkel joined the NC12 board in or around August 2010. (CR 289-90). When Henkel served on the NC12 board, it was comprised solely of Henkel and his co-defendants in this action Michael Sydow ("Sydow") and John Preston ("Preston"). (*Id.*).

At all times relevant to this litigation, TSI and NC12 maintained their principal place of business in Houston, Texas. (*See* CR 225-26, 228-29, 288-89).

NC12 filed for bankruptcy protection on October 14, 2011, under chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. On March 27, 2012, the Bankruptcy Court granted a motion filed by the U.S. Trustee to convert the bankruptcy to a chapter 7 proceeding.

---

[1]      Henkel contends that he joined the TSI board of directors in early 2008 and left the board in the summer of 2009. (CR 276).

**B. The Lawsuit.**

Certain of the NC12 shareholders filed this action in 2011, asserting claims for fraud and shareholder oppression. In November 2011, additional investors and shareholders, including Appellees, intervened, asserting claims based solely on their individual rights as investors in NC12. (CR 52-85).

Appellees assert that Henkel conspired with his fellow NC12 board members Sydow and Preston in a fraudulent scheme to raise millions in investment dollars on behalf of TSI and NC12, while denuding the companies of their assets – valuable technology, a research and development facility, and cash. After Sydow and Preston, aided by Henkel, enjoyed years of cash rolling in to TSI and NC12 which they used to their personal benefit, the investors were left holding only their claims in a chapter 7 proceeding pending in the bankruptcy court sitting in Houston, Texas.

After the bankruptcy court determined that the shareholder oppression and breach of fiduciary duty claims belonged to the NC12 bankruptcy estate, the NC12 bankruptcy trustee filed a separate action against Henkel, Preston, Sydow, and others, under Cause No. 2013-61430, styled *Janet Northrup Chapter 7 Trustee for the Estate of NC12, Inc. v. Michael Collins, et al.*, in the 11th Judicial District

4

Court, Harris County, Texas (the "<u>NC12 Trustee Litigation</u>").[2] Henkel filed a special appearance in the NC12 Trustee Litigation. As did the trial court in this action, the court in the NC12 Trustee Litigation overruled Henkel's special appearance. A tentative settlement is now pending in that action.

## SUMMARY OF ARGUMENT

Henkel purposefully availed himself of the privilege of doing business in Texas, and the trial court properly found that it could exercise personal jurisdiction over Henkel. Henkel's objections to jurisdiction rest, in large part, on the following two insupportable premises: 1) that all jurisdictional facts must be specifically plead in the plaintiff's petition, and 2) that the plaintiff's claims must be based upon specific actions taken by the defendant while physically present within the State of Texas.

Contrary to Henkel's suggestion, Texas courts may consider the allegations in the plaintiff's petition *as well as* in the briefing in response to the defendant's special appearance when evaluating the sufficiency of the jurisdictional arguments and evidence. The argument and evidence before the trial court here was more than sufficient for the trial court to find that it had personal jurisdiction over Henkel.

In addition, although Appellees have presented evidence of action by Henkel *within the State of Texas* in furtherance of the conspiracy alleged in the Appellees'

---

[2]     Appellees request that this Court take judicial notice of the pleadings on file in the NC12 Trustee Litigation.

Petition in Intervention (the "Petition"), physical action *within* the state is not a prerequisite to the exercise of personal jurisdiction.

## ARGUMENT

### I.    Standard of Review.

The question of personal jurisdiction over a non-resident defendant is a question of law reviewed on appeal *de novo*. *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 297 (Tex. 2010). When the trial court does not file conclusions of law or findings of fact, as here, the trial court's judgment implies all necessary findings of fact to support it, and the court of appeals may uphold the decision on any legal theory supported by the evidence. *See Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *McCulley Fine Arts Gallery v. "X" Partners*, 860 S.W.2d 473, 480-81 (Tex. App.—El Paso 1993, no writ). As long as there is "some evidence" on any legal theory for personal jurisdiction and the finding is not against the great weight and preponderance of the evidence, the court of appeals must affirm the decision of the trial court. *McCulley Fine Arts*, 860 S.W.2d at 480-81; *Oechsner v. Ameritrust*, 840 S.W.2d 131, 136 (Tex. App.—El Paso 1992, writ denied).

Further, the trial court, "as the fact-finder, is the sole arbiter of the witnesses' credibility and the weight that their testimony should be afforded." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.).

6

Accordingly, the reviewing court should "not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Id.*

## II. State and Federal Due Process Considerations and "Minimum Contacts."

Texas courts may exercise personal jurisdiction over a nonresident if the Texas Long-Arm statute authorizes jurisdiction and the exercise of jurisdiction "is consistent with the state and federal due process standards." *Am. Type Culture Collection*, 83 S.W.3d at 806. The Texas Long-Arm statute authorizes the exercise of jurisdiction over "those who do business in Texas, which includes contracting with a Texas resident where *either party* is to perform the contract *in whole or in part* in Texas." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992) (emphasis added); *see* TEX. CIV. PRAC. & REM. CODE ANN. at § 17.042.

Texas courts have generally held that the "broad language of the [Texas] long-arm statute permits an expansive reach, limited only by the federal constitutional requirements of due process." *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 714 (Tex. App.—Austin 2000, pet. dism'd w.o.j.). Accordingly, the court may consider solely "whether it is consistent with federal due process for Texas courts to assert personal jurisdiction over" the foreign defendant. *Daimler-Benz*, 21 S.W.3d at 714.

Federal due process considerations ask whether the nonresident defendant has "purposefully established minimum contacts with the forum state" such that the exercise of personal jurisdiction over the nonresident "comports with traditional notions of fair play and substantial justice." *Daimler-Benz*, 21 S.W.3d at 714.

Jurisdiction will be proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"The ultimate test of minimum contacts is whether the defendant purposefully availed itself of the privilege of conducting activities in Texas, thereby invoking the benefit and protection of Texas laws." *Daimler-Benz*, 21 S.W.3d at 714. When a defendant has deliberately engaged in "significant" activities with a state, "*or* has created 'continuing obligations' between himself and residents of the forum," he has availed himself of the privilege of conducting business in that state. *Burger King*, 471 U.S. at 475-76 (emphasis added). "[B]ecause his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*

Accordingly, a finding of "minimum contacts" requires a "substantial connection between the nonresident defendant and the forum state" brought about

"by action or conduct of the nonresident defendant purposefully directed toward the forum state." *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *see also Cartlidge v. Hernandez*, 9 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state."). Requiring that the non-resident's actions be "purposeful" ensures that a nonresident defendant "will not be haled into a jurisdiction based solely upon 'random,' 'fortuitous' or 'attenuated' contacts or the 'unilateral activity of another party or a third person.'" *Guardian Royal*, 815 S.W.2d at 226 (*quoting Burger King*, 471 U.S. at 475).

Implicit in the requirement of a purposeful action and a "substantial connection" is the concept of "foreseeability." *Guardian Royal*, 815 S.W.2d at 227. "Indeed, so long as it creates a substantial connection with the forum State, even a single act can support jurisdiction." *Cartlidge*, 9 S.W.3d at 348; *see also WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 355 (S.D. Tex. 2011) (same).

The Supreme Court in *Burger King* instructs that personal jurisdiction does not turn on "'mechanical' tests" or "'conceptualistic . . . theories of the place of contracting or of performance." *Burger King*, 471 U.S. at 479. Instead, the court

"must review the quality and nature of the defendant's activities in the forum in their totality to decide whether the defendant purposefully availed itself of the privileges offered by the forum state." *Microseismic, Inc. v. TRAC Charitable Remainder Trust*, No. H-12-0118, 2012 U.S. Dist. LEXIS 101108, *19-20 (S.D. Tex. July 20, 2012).

Fair play and substantial justice factors include: "(1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 742 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied).

A defendant objecting to the exercise of jurisdiction bears the burden of presenting "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Jones*, 954 F.2d at 1068. "Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully availed itself of the privilege of conducting business with a forum." *Critin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 280 (Tex. App.—14th Dist. 2009, no pet.). This case does not present that rare circumstance.

10

## III.  General and Specific Jurisdiction.

A defendant's contacts with a forum can support the exercise of either specific or general jurisdiction. *J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 602 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

A specific jurisdictional analysis focuses on "the relationship among the defendants, the forum, and the litigation." *J.D. Fields*, 21 S.W.3d at 603 (citations omitted). "This analysis requires courts to inquire '(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from the alleged injuries that arise out of *or relate to* those activities." *ReedHycalog UK. Ltd. v. United Diamond Drilling Servs.*, No. 6:07 CV 251, 2009 U.S. Dist. LEXIS 77654, *9-10 (E.D. Tex. Aug. 31, 2009). Accordingly, even if the defendant has relatively few contacts with a forum, "the court may still exercise personal jurisdiction over that party if the suit "'arises out of' or is related to the defendant's contacts with the forum.'" *Microseismic*, 2012 U.S. Dist. LEXIS 101108 at *15.

A court may exercise general jurisdiction over a nonresident defendant when the "nonresident defendant's contacts are continuous and systematic," regardless of whether the alleged liability arises from those contacts. *J.D. Fields*, 21 S.W.3d at 602; *see also Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 434 (Tex. App.—Dallas 2012, no pet.). "General jurisdiction can be assessed by

11

evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Villagomez*, 210 S.W.3d at 729.

**IV.    The Trial Court Properly Considered the Appellees' Petition and the Evidence and Briefing Submitted in Response to Henkel's Special Appearance.**

Henkel's repeated suggestion that personal jurisdiction must stand or fall solely on the basis of the allegations in a plaintiff's petition is wrong. Texas courts confirm that the trial court may consider the allegations in the plaintiff's petition *as well as* allegations raised in response to the defendant's special appearance to determine whether the plaintiff satisfied its burden of pleading sufficient facts to support the exercise of personal jurisdiction over a defendant. *See Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.); *Ennis*, 164 S.W.3d at 705; *Hale v. Richey*, No. 10-11-00187-CV, 2012 Tex. App. LEXIS 261, *11 (Tex. App.—Waco Jan. 11, 2012, no pet.); *see also* TEX. R. CIV. P. 120a.

The court in *Hale* expressly stated that the plaintiff's petition, "as well as her response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied her [pleading] burden." *Hale*, 2012 Tex. App. LEXIS 261, at *11.

Accordingly, Henkel's repeated complaint that the Appellees' "petition" allegedly failed to outline facts that give rise to their claims or otherwise establish personal jurisdiction is without merit. *See Ennis*, 164 S.W.3d at 705 (rejecting a

12

challenge to the sufficiency of the petition, noting that the "plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its [pleading] burden").

The Petition, together with the Appellees' briefing in response to Henkel's Special Appearance, identified numerous facts related to Henkel's service on the boards of TSI and NC12 and the claims asserted against Henkel. Specifically, the Petition and briefing established the following in support of the exercise of personal jurisdiction over Henkel:

- Henkel served on the board of directors of Texas-based TSI and NC12. (CR 60-61, 276, 289-90).

- The alleged acts and events complained of in this litigation all would have arisen directly from Henkel's activities as a director of TSI and NC12. (*See* CR 60-61, 63-64).

- Henkel visited Texas on two occasions for meetings in Houston with Sydow. (CR 305-06).

- Henkel has engaged in business in Texas. (CR 60-61).

- NC12 is headquartered in Houston, Texas, and the tortious conduct alleged herein occurred in or was directed at the State of Texas. (CR 64).

Henkel's challenge to the Petition further fails when evaluated substantively. Henkel contends that the Petition "does not allege *any* specific act Henkel did in furtherance of the alleged fraud or the conspiracy to defraud." (Henkel Br. at p. 30) The challenge is easily proven wrong. For example, the Petition specifically alleges that:

13

- Henkel agreed to support the ouster of NC12 directors Johan von der Goltz and Aydin Muderrisoglu, and agreed individually to serve as replacement directors and to vote in favor of Sydow's takeover of the company, which resulted in the theft of NC12's assets. (*See* CR 75).

- Sydow, Preston, and Henkel, as a board, voted to fire Michael Collins ("Collins") and bar him from company property. (CR 75).

- Preston and Henkel vetoed a settlement negotiated in Houston, Texas, between Sydow and Collins, both of whom are Texas residents. (CR 77).

- Sydow, Preston, and Henkel assigned all of NC12's technology to a company called Oscura, Inc. Upon information and belief, Sydow created and controlled Oscura, Inc., as that company has the same Houston address as NC12 and Sydow's law practice. (CR 78).

- All Defendants conspired to commit fraud and breaches of their fiduciary duties. (CR 82).

The Appellee's Petition expressly states that the tortious conduct alleged therein, which would include the above allegations against Henkel, "occurred in or was directed at the State of Texas." (CR 64).

Henkel's complaint that Appellee's failed to amend their Petition "to include any jurisdictional facts relating to the claims the bankruptcy court remanded," is without merit. The factual allegations in the Petition are contained within the general "Facts" section of the Petition and are not specific to any of the counts. Instead, the factual allegations in the Petition and the briefing on the special appearance, including those outlined above, are inextricably intertwined with all of the counts.

14

**V.     The Evidence Established That the Exercise of Specific Personal Jurisdiction over Henkel was Proper.**

The acts and events complained of in this litigation all arise directly from Henkel's alleged tortious conduct as a director of TSI and NC12 – both Texas-based companies. In conspiring with his co-directors at TSI and NC12, Preston and Sydow, to raise funds through fraudulent misrepresentations and then denuding the companies of their assets, Henkel could reasonably foresee that NC12 and its shareholders and investors would suffer direct economic injury. Accordingly, Henkel is subject to the exercise of personal jurisdiction by this Court under a specific jurisdictional analysis, regardless of whether he had even ever stopped foot in this state. *See Glenco Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157 (Tex. App.—Fort Worth 2008, no pet.) (affirming the exercise of personal jurisdiction over the foreign directors of a Delaware corporation headquartered in Texas in an action arising from their board service).

Moreover, Henkel purposefully availed himself of the privilege of doing business in Texas by, among other things:

- Serving as a board member for SulphCo., TSI, and NC12 – all companies based in Texas;

- Personally investing in NC12;

- Meeting with co-conspirator Sydow *in Texas* on at least two separate occasions; and

- Actively participating in litigation in Texas in an unrelated matter and consenting to a Texas court's jurisdiction without seeking a ruling on his special appearance filed therein.

Henkel cannot reasonably contend that he has not availed himself of the privilege of conducting business in Texas or that he could not have reasonably anticipated that he could be haled into a Texas court as a result of his purposeful conduct as a director of TSI and NC12. As discussed below, Henkel had already faced suit in a Texas state court in connection with his service on the board of another company and had voluntarily consented to the Texas court's jurisdiction in that action *before* he joined the NC12 board. Henkel was certainly aware that his service on the board of NC12 could also result in litigation in Texas. Freshly out of the litigation in a Texas court, Henkel could easily have declined to serve on the NC12 board – a company based in Texas – when appointed in 2010. He did not. Instead, Henkel joined the board as part of Sydow's maneuvers to take over control of NC12 and thereafter conspired with Sydow in a course of conduct that ultimately destroyed the company. (*See* CR 289-90).

Assuming for argument purposes only that Henkel's two visits to Texas were the only contacts Henkel had with Texas, they would nonetheless present a sufficient basis for the exercise personal jurisdiction over Henkel as the causes of action asserted against Henkel arise directly out of his service as a TSI/NC12 board member and those visits to Texas for meetings with his co-conspirator. *See Mem'l*

16

*Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex. App.—Houston [14th Dist.] 1992, no writ) (even a single contact with the forum may support the exercise of personal jurisdiction if there is a substantial connection between the contact and the cause of action).

Henkel's challenge to the two meetings in Texas as supporting personal jurisdiction is without merit. Rather than producing credible evidence that the meetings did not occur, Henkel questions what may have transpired during those meetings. Henkel contends that speculation about the purpose of the meetings or what may have been discussed would be irrelevant. However, such complaints go to the merits of the allegations, *i.e.* suggesting that Henkel did not conspire with Sydow. Challenges to the merits of a claim cannot be resolved on a special appearance.[3] *See Pulmosan Safety Equip. Corp.*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Henkel's reliance on *Shaffer v. Heitner*, 433 U.S. 186 (1977) is misplaced. The plaintiffs in *Shaffer* sought to exercise jurisdiction over the officers and directors of a Delaware corporation based solely on the fact that the company was incorporated in Delaware. *See Shaffer*, 433 U.S. at 213-14. The plaintiff in *Shaffer* "did not allege . . . that appellants [ ] ever set foot in Delaware." *Id.* Nor did he

---

[3] If Henkel's meetings with Sydow were entirely innocuous and unrelated to the conspiracy claim asserted against Henkel, he was free to submit evidence to the trial court as to what was in fact discussed during those meetings. He did not. He cannot escape the trial court's personal jurisdiction by alleging, without evidence, that the meetings *could be* unrelated to the fraudulent conspiracy alleged.

17

"identify any act related to his cause of action as having taken place in Delaware."

*Id.*

In stark contrast to *Shaffer,* the Appellees here do not contend that Henkel's service as a director of TSI/NC12 *alone* subjects him to personal liability or to jurisdiction in a Texas court. To the contrary, as outlined above, Appellees have alleged that Henkel engaged in activities in or directed to Texas in furtherance of his conspiracy of fraud with Preston and Sydow that subject him to personal liability in his individual capacity. And, unlike the plaintiff in *Shaffer*, Appellees produced evidence that Henkel stepped foot into Texas at least twice in furtherance of that conspiracy. This fact alone also distinguished the present case from *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 796-97 (Tex. 2002). Appellees have alleged that Henkel engaged in a conspiracy with Sydow and Preston to defraud the TSI/NC12 shareholders and investors. Appellees have identified specific actions by Henkel in pursuit of that conspiracy, including trips to Texas to meet with his co-conspirator.

*BMC Software* is further distinguishable in that all of the key facts occurred in Europe, not Texas, including the contract negotiations, the alleged misrepresentations, the plaintiff's employment pursuant to the subject contract, and the plaintiff's injury. 83 S.W.3d at 793. Here, the "operative facts" all arise in connection with NC12's corporate activities which were conducted in and from the

18

company's headquarters in Texas, with Henkel's participation in same. Moreover, the injury in Texas is apparent in the pending bankruptcy in a federal court sitting in Texas and the millions in investor claims filed therein. Accordingly, unlike the connection alleged in *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007), there is a substantial connection between Henkel and the Appellees' claims.

Henkel cannot escape the court's jurisdiction with the argument that his participation in the corporate affairs of the company were undertaken solely in his capacity as a director. "It is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a corporate representative." *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Moreover, "a corporate officer is not protected from the exercise of specific jurisdiction even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, *directed at* the forum state, for which he may be held personally liable." *Ennis*, 164 S.W.3d at 707. Accordingly, regardless of whether Henkel acted in the capacity of an officer or director of TSI and/or NC12, Henkel is subject to *personal* liability and personal jurisdiction in a Texas court based upon his purposeful activity in and directed to Texas.

19

Moreover, to the extent that the trial court judged the credibility of the witnesses and evidence, it had a sufficient basis for judging credibility in favor of the Appellees. As even Henkel acknowledges, Henkel made certain express representations in his affidavit submitted in support of his Special Appearance and/or in his discovery responses regarding his contacts with Texas that were squarely refuted by the evidence.

### 1. Henkel Traveled to Texas for Meetings with His Co-Conspirator.

Henkel claimed that he had not visited or traveled to Texas in the past 30 years, but that "[m]ore than thirty years ago, [he] made approximately three visits to Texas as a representative of [his] employer at that time." (CR 38) Appellees submitted evidence of Henkel's physical attendance at two meetings in Texas with his alleged co-conspirator, which evidence Henkel made no attempt to rebut.

Charles Austin Kimball ("Kimball"), former TSI/NC12 employee, reported that he picked Henkel up at Houston's Intercontinental Airport on two occasions for meetings in Houston at the direction of Sydow. (CR 305-06). On one occasion, Kimball drove Henkel to the Houstonian Hotel. (*Id.*). On the second occasion, Kimball drove Henkel to Sydow's law office on Woodway Drive. (*Id.*). These two visits to Texas are significant as they reflect meetings *in Texas* between two NC12 directors in furtherance of the conspiracy alleged in the Petition.

Kimball's affidavit was on file with the trial court for 30 days before the hearing on Henkel's Special Appearance, leaving Henkel sufficient time to respond to Kimball's affidavit with his own affidavit, testimony, or other evidence to establish that he never met Kimball, was never picked up at the airport for meetings with Sydow or anyone else, and never met with Sydow in Houston.

When Appellees filed their Motion for New Trial on August 20, 2014, Henkel was presented with another opportunity to deny or otherwise refute Kimball's affidavit testimony placing Henkel in Houston for meetings with Sydow on two separate occasions. Henkel did not take that opportunity. Instead, Henkel suggested – in briefing only, without evidence – that he "forgot about these visits and was not able to locate information about them when he reviewed his travel-related documents" and complained that *even if he did travel to Texas*, the Appellees did not include the allegation in the Petition. (CR 333).

Henkel's challenge to the evidence regarding his visits to Texas in furtherance of the alleged conspiracy is without merit. Notably, Henkel did not file a supplemental affidavit denying the trips or saying that he could not recall them or looked, but could not find travel records for the trips. Henkel's affidavit in support of his Special Appearance is dated September 26, 2011. (CR 39). Kimball was employed with TSI/NC12 from 2008 through 2010. (CR 305). Therefore, Henkel's trips to Texas would have been at some point during the period 2008 through 2010.

21

Accordingly, the visits with Sydow in Texas could not have occurred any more than four years before the date Henkel signed his affidavit. Henkel's suggestion that he may have forgotten about those visits is not credible in light of Henkel's memory of three visits to Texas "more than thirty years" before the date of his affidavit (CR 38) and three flight connections in Texas since 2000. (CR 284-85).

In failing to challenge Kimball's clear and direct affidavit, Henkel tacitly admitted the meetings with Sydow *in Texas*, whether or not he actually "*forgot* about those visits.*" (CR 333) (emphasis added).

### 2. Henkel Served as a Director of NC12.

In his responses to interrogatories, which Henkel signed on March 3, 2014, Henkel denied having served as a director of NC12. (CR 278-79). However, the NC12 website identifies Henkel as a member of the NC12 board. (CR 288). Henkel was further identified as an NC12 board member in a confidential memorandum sent to the NC12 investors on October 21, 2010, informing the investors of the appointment to the NC12 board of Preston and Henkel. (CR 288-90). More importantly, in the proof of claim Henkel signed on August 2, 2012, and filed in the NC12 bankruptcy case, Henkel identified himself as "Former Director" of NC12. (CR 324-25).

### 3. Henkel Invested in a Texas Company.

Henkel asserted that he does not have any investments in Texas. (CR 39). The assertion is disingenuous. Despite the Nevada incorporation, NC12 was very much a Texas company. Henkel was a TSI/NC12 shareholder in his individual capacity, with 19,230 shares listed as held in his name. (CR 295).

### 4. Henkel Previously Consented to a Texas Court's Jurisdiction in Another Matter Arising from Board Service for Another Company.

Henkel asserted that "[e]xcept for this lawsuit, [he] has never been a party in litigation in any state or federal court in Texas." (CR 39). As the following demonstrates, that statement was false.

Henkel served on the board of directors of SulphCo, Inc. from December 2005 to August 2006. (CR 232, 257). On November 6, 2008, Thomas Hendrickson filed a shareholder derivative action on behalf of the SulphCo shareholders against Henkel and others in the 127th Judicial District Court, Harris County, Texas, styled *Thomas Hendrickson v. Rudolf W. Gunnerman, et al*, under Cause Number 2008-66743 (the "Hendrickson Litigation"). (*See* CR 258-270). On January 21, 2009, Henkel filed a special appearance in the Hendrickson Litigation. The court did not hold a hearing on Henkel's special appearance in that action.

On June 10, 2010, Henkel joined in an Amended Joint Motion for Entry of Scheduling Order and Preliminary Approval of Proposed Settlement in the

Hendrickson Litigation.[4] (CR 265-69). Henkel's joinder in that motion *was not made* subject to his special appearance. (*Id.*).

On August 13, 2010, the 127th Judicial District Court entered its Order and Final Judgment in the Hendrickson Litigation on the joint motion filed by the parties therein. (CR 258-64). In that order, the court expressly found that it had jurisdiction over the individual defendants, including Henkel. (CR 259). Henkel's joinder in the motion and final order was a general appearance in that matter that waived his special appearance. *See* Tex. R. Civ. P. 120a; *Shavers v. Sunbelt Equip. Mktg.*, No. 10-11-00330-CV, 2012 Tex. App. LEXIS 4203, *7-10 (Tex. App.— Waco May 23, 2012, no pet.) (motion for summary judgment filed after a special appearance seeking dismissal for lack of personal jurisdiction was a general appearance that waived the special appearance).

## VI. Traditional Notions of Fair Play and Substantial Justice Support the Exercise of Jurisdiction Over Henkel.

Henkel asserted that it would be burdensome for him to participate in this litigation in Texas, citing only the travel time from Europe to Texas. However, as noted above, it appears that Henkel would be well accustomed to the travel through his business dealings throughout the United States.

---

[4] This affirmative action by Henkel was just over one year before Henkel executed his affidavit in support of his Special Appearance in this case. It is difficult to imagine that he forgot his recent request for relief in a Texas court.

Despite Henkel's attempt to portray himself as provincial and litigation in Texas as a hardship, online biographies and reports on Henkel describe a global investor with a significant U.S. presence, for whom litigation in Texas would not be a burden. Henkel is No. 1171 on Forbes list of The World's Billionaires. (CR 296-97). Henkel is a member of the Henkel family, which controls Henkel KGaA, a major worldwide manufacturer of chemicals, household products, and adhesives. (CR 297-304). Henkel has been the Vice Chairman of the Shareholders' Committee of Henkel KGaA since 1990. (*Id.*). Henkel served as a Director of Clorox Co., headquartered in California, from 2000 until November 2004. (*Id.*).

Henkel is also a founder and owner of Canyon Equity LLC ("Canyon Equity"), headquartered in Larkspur, California. (CR 291-94). Henkel is described on the Canyon Equity website as follows:

> In addition to begin an owner of Canyon Equity, Christoph Henkel has significant holdings in Germany and the United States. Along with his family, he owns a controlling interest in Henkel KGaA, a German conglomerate, based in Düsseldorf. He sits on the board of Henkel KGaA and several other of its affiliates. Christoph also invests in numerous technology-based companies, bio-tech companies, and cinema production companies. He has an extensive real estate portfolio in Europe and the United States. A passionate outdoorsman and an environmental preservationist, Christoph has acquired large parcels of land around the world with the purpose of conserving them from excessive development.

(CR 294).

In any multi-state dispute, "someone will always be inconvenienced." *Tobasso v. Bearcom Group, Inc.*, No. 05-11-01674-CV, 2013 Tex. App. LEXIS 7866, *11 (Tex. App.—Dallas June 26, 2013, no pet.). Accordingly, the argument is frequently rejected as a basis for denying jurisdiction. *Id.* Here, Henkel failed to produce any credible argument or evidence that litigation in a Teas court would be unduly burdensome.

Henkel further claimed that Texas has little interest in providing a forum for this litigation, asserting that the "injury occurred outside of Texas." The argument was simply wrong. NC12 – the company driven into bankruptcy by the Defendants' fraudulent conduct – was doing business *in Texas* and is now a chapter 7 debtor in a federal court here in this state. Accordingly, the trial court has an interest in adjudicating the claims asserted herein which arise from NC12's operations in this state. *See Tobasso*, 2013 Tex. App. LEXIS 7866, at *11.

Although Henkel also complained about the restrictions on the subpoena power of the trial court, he failed to identify any witnesses or evidence that would be necessary for the litigation of this matter beyond the range of the trial court's subpoena power. Moreover, given the pending bankruptcy proceedings, the logical presumption is that the books and records of the company and other evidence relevant to these proceedings reside here in Houston.

## CONCLUSION

For all of the above-mentioned reasons, this Court is hereby respectfully requested to affirm the order of the District Court.

Respectfully Submitted,

/s/    Kelley M. Keller
Kelley M. Keller
State Bar No. 11198240
Tracey N. Ellison
State Bar No. 15054720
ELLISON & KELLER, P.C.
5120 Woodway Drive, Suite 6019
Houston, Texas  77056
713-266-8200 (Telephone)
713-266-8201 (Facsimile)
kkeller@ellison-keller.com

*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded via electronic mail and/or eservice, to the following attorneys of record on March 27, 2015.

Jane Langdell Robinson
Jamie Aycock
AHMAD, ZAVITSANOS, ANAIPAKOS,
  ALAVI & MENSING, P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010
713-655-0062 (Facsimile)
*Attorneys for Appellant*

/s/    Kelley M. Keller
Kelley M. Keller

27

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typefact and word-count requirements set forth in the Texas Rules of Appellate Procedure. This brief has been prepared, using Microsoft Word, in 14-point Times New Roman for the body and 12-point Times New Roman for footnotes. This brief contains 6,626 words, as determined by the word count feature of Microsoft Word, excluding those portions exempted by TEX. R. APP. P. 9.4(i)(1).

 /s/   Kelley M. Keller  
Kelley M. Keller